**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

**ANGELA D. LUSTER,**

    **Plaintiff,**

    v.                                                        Case No. 07-C-1009

**MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration,**

    **Defendant.**

---

## DECISION AND ORDER

---

### NATURE OF CASE

The plaintiff, Angela D. Luster ("Luster"), commenced this action on November 15, 2007, seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1382c. Luster's appeal will be addressed herein.

### PROCEDURAL HISTORY

On October 14, 2004, Luster filed an application for supplemental security income benefits, claiming an onset of disability of December 5, 2002. (Tr. 51-53.) Luster's application was denied initially and upon reconsideration. (Tr. 27-28.) Pursuant to Luster's request, a hearing was held before an administrative law judge ("ALJ") on March 15, 2007. Luster, who

was represented by counsel, appeared and testified. A vocational expert also testified at the hearing. (Tr. 438-63.)

In an April 25, 2007, decision, the ALJ denied Luster's claim. At the time of the ALJ's decision, Luster was fifty years old. Luster has a high school equivalency certificate (GED) and past work experience as a packing clerk at a clothing store. The ALJ determined that Luster's alleged impairments of chest pain secondary to anxiety, fibromyalgia,[1] hypertension, Hepatitis B and depression with anxiety were "severe" as defined in the Social Security Act, but that these severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("the Listings"). (Tr. 13-16.) The ALJ found that Luster's testimony was less than fully credible. (Tr. 17.)

The ALJ determined that Luster retained the residual functional capacity to perform simple, unskilled work at the light exertional level, so long as the work allowed her to alternate between sitting and standing every thirty minutes. (Tr. 18.) The ALJ found that Luster was unable to perform work that exposed her to hazards, required her to drive, required her to use mathematical skills, necessitated interaction with the public, or involved more than occasional interaction with co-workers and supervisors. (Tr. 18.) The ALJ further found that Luster could not perform her past relevant work but could perform a significant number of jobs including hand packaging, sorting/inspecting and assembly. (Tr. 20.) The ALJ's decision became the

---

[1] Fibromyalgia is defined as "[a] common syndrome of chronic widespread soft-tissue pain accompanied by weakness, fatigue, and sleep disturbances; the cause is unknown." *Stedman's Medical Dictionary* 725 (28th ed. 2006).

Commissioner's final decision when the Appeals Council denied Luster's request for review. (Tr. 4-6.)

Luster immediately filed a new application for supplemental security income benefits. This application was approved by the State agency on September 12, 2007, with payment status beginning May 24, 2007. The issue before this Court is whether the denial of benefits that immediately preceded her award was based on substantial evidence and in accord with the applicable legal standards.

## APPLICABLE LAW

The Social Security Act authorizes disability benefits for those who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental impairments prevent her from doing not only her previous work, but any other substantial gainful employment which exists in the national economy considering her age, education and work experience. 42 U.S.C. § 423(d)(2)(A).

In order to determine whether a claimant is so disabled, the ALJ is required to evaluate in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether her impairment meets or equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("the Listings"), which the Commissioner acknowledges to be conclusively disabling; (4) whether the claimant possesses the residual functional capacity

to perform her past relevant work; and (5) whether the claimant is capable of performing any other work existing in significant numbers in the national economy given her age, education, and work experience. *See Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000); *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *Wolfe v. Shalala*, 997 F.2d 321, 322-3 (7th Cir. 1993). If a claimant satisfies steps one, two and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must demonstrate that she lacks the residual functional capacity to perform her past work. The claimant bears the burden at steps one through four. *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). Once step four is satisfied, the burden shifts to the Commissioner to establish that the claimant is capable of performing work in the national economy. *Id.*; *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Knight*, 55 F.3d at 313. The process is sequential and if the ALJ can make a conclusive finding at any step that the claimant either is or is not disabled, then the ALJ need not progress to the next step. 20 C.F.R. § 404.1520(a)(4).

Review of the Commissioner's decision is limited. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the finding of an ALJ will only reverse if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Clifford*, 227 F.3d at 869. Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue,* 478

- 4 -

F.3d 836, 841 (7th Cir. 2007) ("Substantial evidence must be more than a scintilla but may be less than a preponderance.") (citation omitted).

This Court reviews the entire administrative record but does not reconsider facts, reweigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford*, 227 F.3d at 869. Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). However, even if substantial evidence supports the Commissioner's findings, this Court may reverse if the ALJ committed an error of law. *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999).

## ANALYSIS

In this case, the ALJ conducted the standard five-step evaluation to determine whether Luster is disabled and denied Luster's claim at step five. The ALJ determined that Luster has the residual functional capacity to perform simple, unskilled work at the light exertional level. Light work is defined as lifting 20 pounds occasionally and frequently lifting or carrying objects weighing 10 pounds, standing and/or walking 6 of 8 hours, or sitting most of the time. 20 C.F.R. § 416.967. On appeal, Luster asserts several challenges to the ALJ's decision.

Luster argues that the ALJ's decision should be remanded because the ALJ did not accommodate Luster's "stress limitations" in Luster's residual functional capacity or in the

hypothetical question that he posed to the vocational expert at the hearing. (Plaintiff's Brief at 11-12.) Luster contends that the ALJ found that stress contributed to Luster's chest pain and that it was part of her depression. (Plaintiff's Brief at 11.)

The ALJ found chess pain secondary to anxiety and depression with anxiety to be a severe limitation for Luster. (Tr. 13.) As noted by the ALJ, the records from Aurora Behavioral Health Centers show that Luster presented with a depressed mood due to financial stressors, problems with housing, problems regaining custody of her children and problems dealing with the State of Wisconsin W-2 work force representative who wanted her to work to maintain her W-2 income. (Tr. 14.) Luster was diagnosed with recurrent major depressive disorder and prescribed medications. Luster attended four therapy sessions and was discharged from treatment on April 28, 2004, for failure to keep her appointments. (Tr. 96.)

The ALJ relied on the psychological evaluation performed by Darrell L. Hischke, Ph.D. ("Hischke"). Hischke opined that Luster's depression did not result in significant functional limitations given that Luster had been oriented to time, place and person. Luster was able to follow a simple three-step task without difficulty. (Tr. 17 citing Ex. B9F (Tr. 122-26).) The ALJ further noted that although Luster performed poorly on the calculation tests, she was able to read and count well enough to go out on "check day" to pay her bills with money orders. Luster reported that she did not get along well with others but that she did relate well to family and neighbors. (Tr. 125.) Hischke determined that Luster's ability to understand, remember and carry out instructions was mildly limited. Luster's ability to maintain concentration, persistence and pace was moderately limited. Luster's ability to relate to supervisors and co-workers was

- 6 -

mildly limited. Luster's ability to cope with routine work stress and adapt to changes was moderately limited. (Tr. 126.) Hischke assigned Luster a GAF score of 55.[2]

The ALJ determined that the evidence submitted by Aurora Behavioral Health Centers and Hischke demonstrated that Luster's ability to maintain social functioning and maintain concentration, persistence or pace suggested at most that Luster was mildly impaired. The ALJ further determined that although Luster had been treated for depression over the course of four therapy sessions in early 2004, there was no showing of continuous treatment and the record showed that Luster was capable of performing activities of daily life and social functioning requiring significant concentration. Further, Luster had never exhibited any episodes of significant ongoing or continual decompensation. (Tr. 18.)

The ALJ also reviewed the records submitted by medical staff for the Wisconsin Disability Determination Services. This evidence noted no evidence of any severe physical impairment but did cite a depressive disorder resulting in moderate restrictions of activities of daily living, mild difficulties maintaining social functioning, mild difficulties in concentration, persistence or pace and no episodes of decompensation. (Tr. 141.) Keith Bauer, Ph.D. ("Bauer") opined that Luster was "capable of sustaining simple, low stress, routine, competitive work." (Tr. 129.)

---

[2]The Global Assessment of Functioning (GAF) is a diagnostic rating on a 100-point scale of overall psychological functioning. A GAF of 31-40 indicates, among other things, a "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." A GAF of 41-50 indicates "serious symptoms" with a possible inability "to keep a job." A GAF of 51-60 indicates "moderate difficulty in social, occupational, or school functioning." *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. text rev. 2000) ("DSM-IV-TR").

The ALJ discussed the "cryptic 'checkmark-style' disability form completed by Dr. Sami" ("Sami"). (Tr. 19 citing Ex. B18F (Tr. 194-99).) The ALJ noted that this document was unaccompanied by a thorough written report or persuasive testimony and consisted almost entirely of conclusory statements or check marks. The ALJ left the record open for further supplementation by Sami but Sami did not submit any additional evidence. The ALJ gave Sami's opinion, that Luster is unable to satisfactorily perform work on a sustained basis, little weight. (Tr. 19.) This conclusion is supported by an adequate explanation and is reasonable.

The ALJ reviewed all the evidence and determined that Luster retained the residual functional capacity for unskilled work at the light exertional level. The ALJ noted additional restrictions including the restriction that Luster have no contact with the public and only occasional contact with co-workers and supervisors. With respect to Luster's mental impairment, the ALJ determined that Luster's depressive disorder is of minimal severity and would not preclude simple, unskilled work. (Tr. 18.)

In this case, the ALJ determined that Luster's severe impairment included depression with anxiety and chest pain secondary to anxiety. (Tr. 13.) Although the ALJ did not discuss the effects of "stress," in his findings of Luster's severe impairments, Luster fails to persuade this Court that such a mention was required and fails to demonstrate how the ALJ's functional limitations would have been different. The Court determines that the ALJ's findings regarding Luster's residual functional capacity, and in particular her mental impairments, are supported by substantial evidence found in Exhibits B2F and B9F-B13F. The ALJ accommodated Luster's mental limitations by limiting her to simple and unskilled work and significantly

limiting Luster's interactions with the public as well as co-workers and supervisors which addressed Luster's anxiety. This Court will give the ALJ's opinion "a commonsensical reading rather than nitpicking at it." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). Therefore, the Court rejects Luster's argument that the ALJ was required to include "stress" and create additional limitations beyond those set by the ALJ.

The ALJ reasonably considered all of Luster's impairments in making his residual functional capacity finding that Luster could perform light work. The residual functional capacity is the most a claimant can still do despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). When determining a claimant's residual functional capacity, an ALJ must consider "all of the relevant medical and other evidence," including medical source statements and descriptions from the claimant and others about what the claimant can still do. 20 C.F.R. § 404.1545(a)(3). The ALJ considered all of the evidence of record, and, where there were conflicts in the record, resolved those conflicts in a way which made sense in light of the record as a whole. The ALJ's residual functional capacity finding is supported by substantial evidence and is affirmed.

Luster contends that the ALJ failed to properly evaluate her anxiety under the Listings. Luster further contends that the ALJ should have evaluated Luster's brain damage, kidney disorder and gynecological problems. (Plaintiff's Brief at 12-13.) The ALJ considered the following Listings: 1.00 Musculoskeletal System; 5.05, 14.08D Hepatitis; 9.09B, 3.00A, 3.09 Hypertension; 12.04 Affective Disorders (Luster's depression) and 12.07 Somatoform Disorders

but did not find in the medical record evidence that Luster's impairments met those listings. (Tr. 16.)

The applicable Listing for anxiety is 12.06. This Listing, like many of the mental health listings, requires that the individual meet the "B" or "C" criteria as well as criterion "A." The "B" criterion requires at least two of the following: marked restrictions in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation each of extended duration. The "C" criterion requires a complete inability to function independently outside the area of one's home. The ALJ determined that Luster's daily activities are moderately limited. Luster was able to function outside her home in the community, use public transportation and schedule and attend medical appointments alone. The ALJ determined that Luster's ability to maintain social functioning and maintain concentration, persistence or pace suggested at most that Luster was mildly impaired. The ALJ further determined that Luster had never exhibited any episodes of significant ongoing or continual decompensation. Thus, even if the ALJ had discussed Listing 12.06, the ALJ's decision would have remained the same. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

As for the other impairments of brain damage, kidney disorder, gynegological problems and obesity, Luster does not claim that her condition actually meets or equals any specific Listing. In order to meet the requirements of a listed impairment, Luster must meet all of the

elements of the listed impairment. *Rice*, 384 F.3d at 369. Moreover, the claimant bears the burden of producing medical evidence that supports her claims of disability. *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008); *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."). The Court notes that Luster has failed to offer any evidence to support her argument that she was disabled under Listing 12.06 or any other Listing.

Luster also contends that there is no reasoned explanation by the ALJ as to why the combined physical and mental impairments including obesity are not medically equal to a listed impairment. The ALJ specifically noted that Luster did not have a "combination of impairments" that satisfied the regulatory requirements for a disability finding. (Tr. 16.) In *Nelson v. Bowen*, an ALJ's statement that "'[t]he evidence does not show any medically determinable impairments which, singly or combined, preclude claimant from engaging in substantial gainful activity" showed that the ALJ considered the combined effects of the claimant's impairments." 855 F.2d 503, 508 (7th Cir. 1988). In this case, the ALJ considered the "combination of impairments" and thoroughly discussed the medical evidence in his decision. (Tr. 16-18.) Luster's conclusory argument does not warrant a remand for further clarification of the ALJ's decision.

Luster contends that the ALJ failed to obtain an opinion by a state agency doctor to support his opinion regarding medical equivalence to the Listings. (Plaintiff's Brief at 13.) As noted by the Commissioner, the initial and reconsideration disability determinations by the state agency that Luster was not disabled were signed by state agency doctors. (Tr. 27-28.) At the

- 11 -

time they issued their determinations, these doctors had reviewed the record and concluded that Luster's condition did not meet or equal a listed impairment. These forms conclusively establish that "consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." *Scheck*, 357 F.3d at 700 (internal citations omitted). Therefore, substantial evidence supports a finding that Luster did not meet or equal a listing. *Id.*

Luster argues that the ALJ misunderstood fibromyalgia and required proof by objective findings that are not produced by the disease. (Plaintiff's Brief at 14.) Fibromyalgia has been recognized by the Court of Appeals for the Seventh Circuit as a "common, but elusive and mysterious" disease. *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). A diagnosis of fibroymyalgia, however, is insufficient, in itself to establish disability. *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) ("It is not enough to show that she received a diagnosis of fibromyalgia . . ." because "fibromyalgia is not always (indeed, not usually) disabling."). The ALJ noted that the clinical documentation noted "mild to moderate tenderness" over both knee joint areas and of the lower lumbar area and did not note the "trigger points" which are supposedly the distinguishing character of fibromyalgia. (Tr. 15.) The ALJ discussed the submitted evidence but did not "require" proof by objective findings and determined that Luster's fibromyalgia was a "severe" impairment. (Tr. 15.) The ALJ, however, determined that Luster still retained the residual functional capacity to work. The Commisioner, not a doctor selected by a patient to treat her, decides whether a claimant is disabled. *Clifford*, 227 F.3d at 870; 20 C.F.R. § 404.1527(e)(1) .

- 12 -

The ALJ thoroughly discussed the medical evidence. An MRI scan of the lumbar spine and hips performed on October 14, 2004, did not confirm radiculopathy.[3] On August 8, 2005, an ultrasound performed was unremarkable for evidence of right lower extremity pain. On February 10, 2006, a neurological and cardiac examination was performed and the results were within normal limits with no evidence of extremity tenderness or edema. On April 29, 2006, an updated MRI scan of the cervical spine was normal. Office notes from Dr. Pamela Thomas King and Dr. Primo Tanayo through March 2007 document some tenderness of palpation of the lower back on the right side and on the left, buttocks and thighs with no sensory abnormalities noted. Luster reported to her doctors an improvement in her pain symptomatology when she was taking her opiate medication. In reaching his conclusions, the ALJ relied on Exhibits B14F-B15F, B23F-24F and B32F.

The ALJ discussed the findings from Dr. M. A. Razzaq ("Razzaq") that Luster is unable to lift over 5 pounds. (Tr. 192.) The ALJ discounted this finding because the medical evidence did not support it. The ALJ noted that on June 17, 2004, Luster's exercise test results were strong. The ALJ referred to the "sweeping claims" made by Razzaq in forms he filled out for waiver from the State of Wisconsin W2 workforce program and at the request of Luster's attorney which would restrict Luster to less than a full range of sedentary work. (Tr. 18 citing Ex. B17F and Ex. B31F.) The ALJ noted that the treatment records reflected little in the way of clinical findings or diagnostic tests in support of Razzaq's conclusion that Luster could not sustain full time work. (Tr. 19.) Razzaq described Luster's pain as "mild to moderate

---

[3]Radiculopathy is defined as a disorder of the spinal nerve roots. *Stedman's* at 1622.

tenderness" with no neurological abnormalities. (Tr. 176, 412.) Razzaq did not note any extremity weakness or muscle atrophy, both of which may be determined objectively. The ALJ noted that Razzaq's treatment of Luster was limited to recording her subjective complaints and precribing narcotics. The ALJ determined that Razzaq's treatment notes were internally inconsistent and inconsistent with the questionnaire prepared by Razzaq for Luster and did not document symptoms so severe that Luster would be prevented from engaging in substantial gainful employment. (Tr. 19.)

The ALJ concluded that Razzaq's "conclusions were poorly supported by clinical or laboratory data and his results were contrary to the remaining medical evidence in claimant's case." (Tr. 19.) The ALJ did not give Razzaq's opinions controlling weight. A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is (1) supported by medical findings; and (2) consistent with substantial evidence in the record. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); 20 C.F.R.§ 404.1527(d)(2). However, "while the treating physician's opinion is important, it is not the final word on a claimant's disability . . . [as a] patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996) (internal citation omitted).[4] The Court concludes that

---

[4] *See also Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006) (discussing the treating physician rule and stating that while a treating physician has the advantage over other physicians whose reports might figure in a disability case because the treating physician has spent more time with the claimant, "the fact that the claimant is the treating physician's patient also detracts from the weight of that physician's testimony, since, as is well known, many physicians (including those most likely to attract patients who are thinking of seeking disability benefits . . . ) will often bend over backwards to assist a patient in obtaining benefits," and, therefore, "the weight properly to be given to testimony or other evidence of a treating physician depends on circumstances." (internal citations omitted)).

the ALJ's conclusion discounting the opinion of Razzaq is supported by an adequate explanation and is reasonable. (Tr. 16-17.) In this case, the ALJ built the requisite "accurate and logical bridge" from the evidence to his conclusion. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

The Social Security Act specifically provides that the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. *Jones v. Shalala*, 10 F.3d 522, 523 (7th Cir. 1993). "Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Blakes v. Barnhart,* 331 F.3d 565, 568 (7th Cir. 2003). "Under this standard, the ALJ's decision, if supported by substantial evidence, will be upheld, even if an alternative position is also supported by substantial evidence." *Scheck*, 357 F.3d at 699 citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992). In sum, the ALJ adequately articulated his reasons for determining Luster's residual functional capacity. The Court concludes that there is substantial evidence in the record provided by the state agency physicians as well as Luster's treating physicians, to support the ALJ's conclusions regarding Luster's residual functional capacity.

The ALJ determined that although Luster could not perform her past relevant work, she could perform a significant number of jobs in the national economy and therefore was not disabled. (Tr. 20.) The vocational expert, who testified at the hearing, identified 21,000 positions at the light exertional level in the State of Wisconsin that could be performed by an

- 15 -

Case 2:07-cv-01009-RTR   Filed 11/21/08   Page 15 of 16   Document 18

individual of Luster's age, education and work experience, who had Luster's residual functional capacity. (Tr. 457.)

In conclusion, the ALJ properly evaluated the evidence in the record and adequately articulated his reasons for denying Luster's claim for supplemental security income benefits. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Luster retained the residual functional capacity to perform simple, unskilled, light work and was not disabled. Therefore, Luster was not entitled to supplemental security income benefits and her appeal is denied.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Luster's appeal from the Commissioner's final decision denying her October 14, 2004, application for supplemental security income benefits is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

**IT IS ALSO ORDERED** that the Clerk of Court is **DIRECTED** to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 21st day of November, 2008.

BY THE COURT:

*s/ Rudolph T. Randa*
**HON. RUDOLPH T. RANDA**
**Chief Judge**